1
2
3
4
5
6
7                         IN THE UNITED STATES DISTRICT COURT
8                           FOR THE DISTRICT OF ARIZONA
9
10   David Levy Greenberg,                    No. CV-16-08195-PCT-SPL (ESW)
11              Petitioner,                   **REPORT AND
                                              RECOMMENDATION**
12   v.
13   Charles L Ryan, et al.,
14              Respondents.
15
16   **TO THE HONORABLE STEVEN P. LOGAN, UNITED STATES DISTRICT**
17   **JUDGE:**
18          Pending before the Court is David Levy Greenberg's ("Petitioner") "Petition
19   Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By Person in State Custody" (the
20   "Petition") (Doc. 1).  The Court ordered Respondents to answer the Petition.  (Doc. 3).
21   Respondents have answered (Doc. 11), and Petitioner has replied (Doc. 14).  For the
22   reasons set forth herein, it is recommended that the Court deny and dismiss the Petition
23   with prejudice.
24                                   **I.  BACKGROUND**
25          Petitioner challenges his convictions and sentences imposed in 2013 in the
26   Superior Court of Arizona in and for Coconino County (Case No.  CR2011-00784).
27   (Doc. 1 at 2).  The following provides relevant factual background.
28          On August 27, 2009, a police officer arrived at Petitioner's residence in Flagstaff,

Arizona to investigate a report from a father who claimed he saw a man on his property peering into his juvenile daughter's window. (Bates No. 2-3). The father chased the man off his property, and the man fled in a vehicle. (Bates No. 2). The father copied the vehicle's license plate number, and police determined the vehicle was registered to Petitioner. (*Id.*). When officers brought the father to Petitioner's residence for identification purposes, the father identified Petitioner's vehicle as the vehicle the trespasser fled in and stated he was "pretty sure" Petitioner was the trespasser. (Bates No. 3). Upon the officer's request, Petitioner agreed to go to the police station for an interview after expressing initial hesitation. (*Id.*).

During the interview with a detective, Petitioner admitted that he looked into one of the windows of the victim's house while standing on the windowsill. (Bates No. 89). This admission is referred to herein as the "August 27 Confession."

After the August 27, 2009 interview, the detective discovered two prior incidents that led him to believe that Petitioner "was doing more than just wandering onto these people's property . . . ."[1] (Bates No. 236). The detective drafted a search warrant to not only obtain the hat and shoes that Petitioner was reportedly wearing at the time of the trespass, but also any computers and recording storage devices that Petitioner possesses. (Bates No. 236). A magistrate authorized the warrant. (Bates No. 4). As detailed by the Arizona Court of Appeals, police found

> numerous CDs and DVDs containing child pornography, sexually explicit videos of unknowing victims filmed by Greenberg, and a hand-held camera. . . . There were also hundreds of videos of women filmed without their knowledge in Cline Library. The police also found other videos, taken from outside windows, showing women in various stages of undress or in the shower who appear to be unaware they are being filmed.

---

[1] In approximately 2008, a juvenile female living less than ten houses away from the victim in Petitioner's case reported that she saw someone outside her window trying to videotape her. (Bates No. 4, 231-34). The detective also discovered that in 2006, Northern Arizona University's police department contacted Petitioner regarding a report that he was attempting to surreptitiously film women or "down women's blouses." (Bates No. 228, 234).

(Bates No. 15).

On August 31, 2009, the detective interviewed Petitioner a second time. (Bates No. 15). During the interview, Petitioner admitted that he owned the seized items. (*Id.*). This admission is referred to herein as the "August 31 Confession."

In Case No. CR2009-0810 (the "2009 Case"), the State charged Petitioner with one count of criminal trespass alleged to have been committed on or about August 27, 2009 and ten counts of sexual exploitation of a minor. (Bates No. 15). Petitioner filed a motion to suppress the August 27 Confession and the seized evidence, which the trial court granted. (Bates No. 4-5). Upon the State's motion, the trial court dismissed without prejudice all the pending charges except for the trespass charge. (Bates No. 16). The State appealed the trial court's ruling suppressing the seized evidence, but not the ruling suppressing the August 27 Confession. (Bates No. 2-8, 16). While the appeal was pending, Petitioner pled guilty to the trespass charge and was sentenced to a two-year probationary term. (Bates No. 16).

In May 2011, the Arizona Court of Appeals reversed the trial court's ruling suppressing the seized evidence and remanded the case for further proceedings. (Bates No. 2-8). The Arizona Supreme Court denied review of this decision. (Bates No. 26).

Following the Arizona Court of Appeals' decision, the State filed a new criminal case against Petitioner (Case No. CR2011-00784 (the "2011 Case")). The 2011 Case charged Petitioner with six counts of first-degree criminal trespass, two counts of voyeurism, two counts of surreptitious photographing, videotaping, filming, or digitally recording, and twenty counts of sexual exploitation of a minor. (Bates No. 16). The 2011 Case was assigned to a different trial judge than the judge who presided over the 2009 Case.

The trial judge in the 2011 Case conducted a voluntariness hearing and found that both the August 27 and August 31 Confessions were admissible. (Bates No. 17). Petitioner refers to the relitigation of the August 27 and August 31 Confessions' admissibility as a "horizontal appeal" that violates Petitioner's due process rights. (Doc.

1 at 25).

After the trial court found the August 27 and August 31 Confessions admissible, Petitioner agreed to waive his right to a jury trial and the parties stipulated to the record. (Bates No. 17). The trial court found Petitioner guilty of (i) twenty counts of sexual exploitation of a minor; (ii) one count of voyeurism; (iii) one count of surreptitious photographing, videotaping, filming, or digitally recording; and (iv) one count of first-degree criminal trespass. (*Id.*). The trial court sentenced Petitioner to a 340-year prison term. (*Id.*).

On February 12, 2015, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (Bates No. 10-22). The Arizona Supreme Court denied further review on September 22, 2015.[2] (Bates No. 28). On August 31, 2016, Petitioner timely filed this federal habeas proceeding. (Doc. 1).

## II. LEGAL STANDARDS

### A. Legal Standards Regarding Procedurally Defaulted Habeas Claims

#### 1. Exhaustion-of-State-Remedies Doctrine

It has been settled for over a century that a "state prisoner must normally exhaust available state remedies before a writ of habeas corpus can be granted by the federal courts." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971) ("It has been settled since *Ex parte Royall*, 117 U.S. 241, 6 S. Ct. 734, 29 L.Ed. 868 (1886), that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus."). The rationale for the doctrine relates to the policy of federal-state comity. *Picard*, 404 U.S. at 275 (1971). The comity policy is designed to give a state the initial opportunity to review and correct alleged federal rights violations of its state prisoners. *Id.* In the U.S. Supreme Court's words, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state

_____

[2] Although Petitioner states in the Petition that a "pro per petition for post-conviction relief was filed by Petitioner by mail on August 8, 2016 in Coconino County Superior Court" (Doc. 1 at 11), this is not reflected in the record. (Doc. 11 at 7).

courts to correct a constitutional violation." *Darr v. Burford*, 339 U.S. 200, 204 (1950).

The exhaustion doctrine is codified at 28 U.S.C. § 2254. That statute provides that a habeas petition may not be granted unless the petitioner has (i) "exhausted" the available state court remedies; (ii) shown that there is an "absence of available State corrective process"; or (iii) shown that "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).

Case law has clarified that in order to "exhaust" state court remedies, a petitioner's federal claims must have been "fully and fairly presented" in state court. *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014). To "fully and fairly present" a federal claim, a petitioner must present both (i) the operative facts and (ii) the federal legal theory on which his or her claim is based. This test turns on whether a petitioner "explicitly alerted" a state court that he or she was making a federal constitutional claim. *Galvan v. Alaska Department of Corrections*, 397 F.3d 1198, 1204–05 (9th Cir. 2005).

## 2. Procedural Default Doctrine

If a claim was presented in state court, and the court expressly invoked a state procedural rule in denying relief, then the claim is procedurally defaulted in a federal habeas proceeding. *See, e.g., Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001). Even if a claim was not presented in state court, a claim may be procedurally defaulted in a federal habeas proceeding if the claim would now be barred in state court under the state's procedural rules. *See, e.g., Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).

Similar to the rationale of the exhaustion doctrine, the procedural default doctrine is rooted in the general principle that federal courts will not disturb state court judgments based on adequate and independent state grounds. *Dretke v. Haley*, 541 U.S. 386, 392 (2004). A habeas petitioner who has failed to meet the state's procedural requirements for presenting his or her federal claims has deprived the state courts of an opportunity to address those claims in the first instance. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).

As alluded to above, a procedural default determination requires a finding that the

relevant state procedural rule is an adequate and independent rule. *See id.* at 729-30. An adequate and independent state rule is clear, consistently applied, and well-established at the time of a petitioner's purported default. *Greenway v. Schriro*, 653 F.3d 790, 797-98 (9th Cir. 2011); *see also Calderon v. U.S. Dist. Court (Hayes)*, 103 F.3d 72, 74-75 (9th Cir. 1996). An independent state rule cannot be interwoven with federal law. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). The ultimate burden of proving the adequacy of a state procedural bar is on the state. *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003). If the state meets its burden, a petitioner may overcome a procedural default by proving one of two exceptions.

In the first exception, the petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law. *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir. 2014). To demonstrate "cause," a petitioner must show that some objective factor external to the petitioner impeded his or her efforts to comply with the state's procedural rules. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004). To demonstrate "prejudice," the petitioner must show that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier*, 477 U.S. at 494 ("Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial.").

In the second exception, a petitioner must show that the failure to consider the federal claim will result in a fundamental miscarriage of justice. *Hurles*, 752 F.3d at 780. This exception is rare and only applied in extraordinary cases. *Wood v. Ryan*, 693 F.3d 1104, 1118 (9th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). The exception occurs where a "constitutional violation has probably resulted in the conviction of one who is actually innocent of the offense that is the subject of the barred claim." *Wood*, 693 F.3d at 1117 (quoting *Schlup*, 513 U.S. at 327).

**B. Reviewing Habeas Claims on the Merits**

In reviewing the merits of a habeas petitioner's claims, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") requires federal courts to defer to the last reasoned state court decision. *Woods v. Sinclair*, 764 F.3d 1109, 1120 (9th Cir. 2014); *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013). To be entitled to relief, a state prisoner must show that the state court's adjudication of his or her claims either:

> **1.** [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **2.** [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *see also, e.g., Woods*, 764 F.3d at 1120; *Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2010); *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

As to the first entitlement to habeas relief as set forth in 28 U.S.C. § 2254(d)(1) above, "clearly established federal law" refers to the holdings of the U.S. Supreme Court's decisions applicable at the time of the relevant state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). A state court decision is "contrary to" such clearly established federal law if the state court (i) "applies a rule that contradicts the governing law set forth in [U.S. Supreme Court] cases" or (ii) "confronts a set of facts that are materially indistinguishable from a decision of the [U.S. Supreme Court] and nevertheless arrives at a result different from [U.S. Supreme Court] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

As to the second entitlement to habeas relief as set forth in 28 U.S.C. § 2254(d)(2) above, factual determinations by state courts are presumed correct unless the petitioner can show by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see also Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

### A. Ground One: Fourth Amendment Claim

In Ground One, Petitioner argues that his "right to be from unreasonable searches and seizures was violated. Petitioner was denied a full and fair hearing on this issue. Petitioner's rights under the 4th and 14th Amendments were violated." [3] (Doc. 1 at 16-17). Petitioner asserts that "[t]hese issues were raised in the direct appeal briefs and in Petitioners [sic] petition for review." (*Id.* at 17). Respondents contend that Ground One is not cognizable in this proceeding. (Doc. 11 at 8-9). For the following reasons, the undersigned concurs.

The Fourth Amendment prohibits unreasonable searches and seizures. Under a judicially created doctrine known as the "exclusionary rule," evidence obtained by police officers in violation of the Fourth Amendment is excluded at trial. *Stone v. Powell*, 428 U.S. 465, 482 (1976). The exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920 (1984). That is because the "exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984).

In *Stone*, 428 U.S. at 494, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." The Court did not find that the exclusionary rule's deterrent effect would be materially diminished if Fourth Amendment claims could not be raised in a federal habeas proceeding. *Id.* at 494-95. The Court further found that even if there was an additional incremental deterrent effect, it would be outweighed by "costs to other values vital to a rational system of criminal

---

[3] "The Fourth Amendment, binding on the States by the Fourteenth Amendment, provides that [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *Maryland v. King*, 133 S.Ct. 1958, 1968 (2013) (internal quotation marks omitted) (alteration in original).

justice." *Id.* at 494. Thus, in reviewing a federal habeas petitioner's Fourth Amendment claim, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or *even whether the claim was correctly decided*." *Ortiz–Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (emphasis added). In determining whether there was a full and fair opportunity for litigation of a habeas petitioner's Fourth Amendment claim, courts have considered "the extent to which the claims were briefed before and considered by the state trial and appellate courts." *Terrovona v. Kincheloe*, 912 F.2d 1176, 1178-79 (9th Cir. 1990).

Petitioner does not dispute that he received a full and fair opportunity to litigate his Fourth Amendment claim before the trial court. Petitioner also does not dispute that the claim was briefed before and considered by the Arizona Court of Appeals. Rather, Petitioner argues that the Arizona Court of Appeals' May 2011 decision reversing the trial court's suppression of the seized evidence in the 2009 Case was an "'egregious error' in its' analysis and application of Supreme Court controlling precedent." (Doc. 14 at 5). Petitioner also contends that the Court of Appeals "had no factual basis that supported it's [sic] reversal of the trial court." (*Id.* at 5-6).

To support his assertion that *Stone* does not bar habeas review of his Fourth Amendment claim, Petitioner cites cases from the Seventh, Tenth, and Eleventh Circuit Courts of Appeals. (*Id.* at 3-4). However, "[o]ut-of-circuit cases are not binding on this Court and therefore do not constitute 'controlling authority.'" *Farrakhan v. Gregoire*, 590 F.3d 989, 1000 (9th Cir. 2010), *overruled on other grounds*, 623 F.3d 990 (9th Cir. 2010) (en banc). Further, the out-of-circuit cases cited by Petitioner are inapposite. For instance, it is not "manifestly evident that the state courts did not recognize or apply the controlling" constitutional standards. *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978). The record does not reveal "circumstances that imply refusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth amendment." *Miranda v. Leibach*, 394 F.3d 984, 998 (7th Cir. 2005). Petitioner's Fourth Amendment claim was not "ignored" by the Arizona Court of Appeals. *Lawhorn*

*v. Allen*, 519 F.3d 1272, 1288 (11th Cir. 2008) ("A claim argued at trial and on appeal but 'ignored' by the state appellate court has not received full and fair consideration, and our consideration of it is thus not barred by *Stone*.").

The Ninth Circuit has "read Stone as a categorical limitation on the applicability of fourth amendment exclusionary rules in habeas corpus proceedings." *Woolery v. Arave*, 8 F.3d 1325, 1328 (9th Cir. 1993) (citations omitted)). The undersigned finds that Petitioner's argument "goes not to the fullness and fairness of the opportunity to litigate the claim, but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant." *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994); *Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005) (holding that *Stone* barred petitioner's Fourth Amendment claim despite his contention that the hearing he received was not full and fair because the state court's factual findings were "not supported by the evidence"); *Locks v. Summer*, 703 F.2d 403, 408 (9th Cir. 1983) (rejecting argument that petitioner did not receive a full and fair hearing because the state appellate court considered evidence not offered at the suppression hearing); *Mack v. Cupp*, 564 F.2d 898, 902 (9th Cir. 1977) ("[T]he court's mistaken recitation of the facts, even assuming arguendo that it resulted in an incorrect decision, is not enough in and of itself to establish that Mack's claims were not fully and fairly considered."); *Newman v. Wengler*, 790 F.3d 876, 880 (9th Cir. 2015) (finding habeas claim barred under *Stone* that was based on the argument that the state appellate court wrongly decided petitioner's Fourth Amendment claim); *Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986) ("All *Stone v. Powell* requires is the initial opportunity for a fair hearing. . . . Such an opportunity for a fair hearing forecloses this court's inquiry, upon habeas corpus petition, into the trial court's subsequent course of action, . . . including whether or not the trial court has made express findings of fact.") (citations omitted).

The arguments presented in support of Petitioner's Fourth Amendment claim in this action are the same arguments that the Arizona Court of Appeals rejected. (Doc. 1 at 19-23; Bates No. 355-61). The undersigned finds that Petitioner received a full and fair

opportunity to litigate his Fourth Amendment claim in the state courts. *See Abell v. Raines*, 640 F.2d 1085, 1088 (9th Cir. 1981) ("The record of the state proceedings compels the conclusion that appellant received a full and fair opportunity to litigate his Fourth Amendment claims. The identical claims pressed upon us were considered, and squarely rejected, by the Arizona courts."). Because a "Fourth Amendment claim is not cognizable in federal habeas proceedings if a petitioner has had a full and fair opportunity to litigate the claim in state court," it is recommended that the Court dismiss Ground One. *Ortiz–Sandoval*, 81 F.3d at 899.

## B. Ground Two: Admissibility of the August 27 and August 31 Confessions

Ground Two contends that Petitioner's federal constitutional rights were violated by the admission of his August 27 and August 31 Confessions. (Doc. 1 at 17). This claim presents three distinct issues: (i) the voluntariness of the August 27 Confession; (ii) the voluntariness of Petitioner's August 31 Confession; and (iii) Petitioner's contention that his due process rights were violated when the trial court in the 2011 Case allowed the State to "horizontally appeal" (i.e. relitigate) the trial court's ruling in the 2009 Case that Petitioner's August 27 and August 31 Confessions were inadmissible. (*Id.* at 23-35). Petitioner also contends in Ground Two that his "5th Amendment right to remain silent" and "6th Amendment right to counsel" were violated. (*Id.* at 17).

### 1. Voluntariness of Petitioner's August 27 Confession

In his direct appeal in the 2011 Case, Petitioner argued that his August 27 Confession was involuntary, asserting that the interviewing detective impliedly promised that Petitioner would be charged with a misdemeanor, not a felony, if Petitioner confessed.[4] (Bates No. 361-65). Respondents do not raise any affirmative defenses with

---

[4] To the extent that Petitioner claims that the August 27 Confession was involuntary as a result of an alleged illegal arrest in violation of the Fourth Amendment, the claim is barred by *Stone*. As Petitioner had a full and fair opportunity to litigate the the Fourth Amendment claim in state court, there is no basis for federal habeas relief. *See Myers v. Rhay*, 577 F.2d 504, 508 (9th Cir. 1978) (finding that *Stone* foreclosed review of habeas claim that petitioner's self-incriminating statements should have been excluded at trial because it was obtained "incident to an illegal arrest"); *Terrovona*, 912 F.2d at 1178 (finding that *Stone* and *Myers* bar federal review of a state prisoner's warrantless arrest claim). Moreover, the undersigned concurs with Respondents'

- 11 -

1   respect to the reiteration of this claim in the Petition, but assert that the claim is without
2   merit. (Doc. 11 at 14-17).

3       A confession must be voluntary to be admitted into evidence. *See Dickerson v.*
4   *United States*, 530 U.S. 428, 433 (2000). A confession that is other than "the product of
5   an essentially free and unconstrained choice by its maker . . . offends due process."
6   *Doody v. Schiro*, 596 F.3d 620, 638 (9th Cir. 2010) (en banc) (quoting *Schneckloth v.*
7   *Bustamante*, 412 U.S. 218, 226 (1973). Earlier Supreme Court decisions indicated that a
8   confession obtained "by any direct or implied promises, however slight, [or] by the
9   exertion of any improper influence" is involuntary. *See, e.g., Hutto v. Ross*, 429 U.S. 28,
10  30 (1976) (per curiam ) (internal quotation marks and citation omitted). Yet the Supreme
11  Court has made clear that this does not constitute "current precedent" or the standard for
12  "determining the voluntariness of a confession." *Arizona v. Fulminante*, 499 U.S. 279,
13  285 (1991). Instead, "[t]he promise must be sufficiently compelling to overbear the
14  suspect's will in light of all attendant circumstances." *Beaty v. Schriro*, 509 F.3d 994,
15  999 (9th Cir. 2007) (citation omitted); *see also Dickerson*, 530 U.S. at 434 (determining
16  whether a confession was involuntary involves "an inquiry that examines whether a
17  defendant's will was overborne by the circumstances surrounding the giving of a
18  confession") (internal quotation marks and citation omitted).

19      In determining whether a confession was coerced, a court must examine the
20  totality of the circumstances. *Withrow v. Williams*, 507 U.S. 680, 689 (1993). "Those
21  potential circumstances" include (i) "the crucial element of police coercion," (ii) the
22  defendant's maturity, education, physical condition, and mental health, (iii) the location,
23  length, and continuity of the interrogation, and (iv) the "failure of police to advise the
24  defendant of his rights to remain silent and to have counsel present during custodial
25  interrogation." *See id.* at 693-94 (citations omitted).

26

27  _____
    conclusion that the Arizona courts did not unreasonably find that Petitioner was not under
28  arrest at the time of the August 27, 2009 interview. (Doc. 11 at 13-14). To the extent
    that Petitioner raises a Fifth Amendment/*Miranda* claim, Section III(B)(5) below
    explains that it is unexhausted and procedurally defaulted

A claim that a petitioner's confession was coerced involves mixed questions of law and fact. The ultimate conclusion by a state court that a confession was voluntary constitutes a legal issue that is reviewed under Section 2254(d)(1). *Lambert v. Blodgett*, 393 F.3d 943, 978 ("[T]he state court's ultimate conclusion is reviewed under § 2254(d)(1)[.]"); *DeWeaver v. Runnels*, 556 F.3d 995, 1003 (9th Cir. 2009) (rejecting habeas claim that defendant's confession was involuntary, concluding "that the state appellate court's decision was not contrary to Supreme Court precedent or an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'") (quoting 28 U.S.C. § 2254(d)(2)). However, the "factual findings underlying the state court's conclusion on the mixed issue are accorded a presumption of correctness." *Lambert*, 393 F.3d at 976; *Miller v. Fenton*, 474 U.S. 104, 117 (1985) (state court findings regarding the circumstances of an interrogation, the defendant's prior experience with the criminal justice system, and his familiarity with the *Miranda* warnings constitute factual findings entitled to a presumption of correctness on federal habeas review).

The trial court in the 2011 Case concluded that the detective who interviewed Petitioner on August 27, 2009 did not make any express or implied promises to Petitioner. (Bates No. 19). The Arizona Court of Appeals found that the record supported that determination. (*Id.*). This factual finding is entitled to a presumption of correctness. *Lambert*, 393 F.3d at 976. Based on the discussion below, the undersigned finds that Petitioner has not met his "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The transcript of the August 27, 2009 interview does not indicate that the interviewing detective implicitly or expressly promised Petitioner that he would be charged with a misdemeanor if Petitioner agreed to confess his actions. Nor does the transcript indicate that the interviewing detective made any other implied or express promises to Petitioner.

In encouraging Petitioner to tell the truth, the detective stated "You didn't rob any bank or anything. We're talking about **standing in a yard** looking through a window.

Big deal. Right?" (Bates No. 55) (emphasis added). The detective explained that such action would constitute a misdemeanor crime. (Bates No. 66). Later in the interview, the following exchange occurred:

> DET. HOLYFIELD:  . . . . We're talking about a misdemeanor. That's what we're talking about.
>
> MR. GREENBERG:  A misdemeanor? That's—that's true?
>
> DET. HOLYFIELD:  Well, you know, if—if this—you know, if you **just looked through the window—and that's all that we're talking about, right?**
>
> MR. GREENBERG: According to the police, yeah.
>
> DET. HOLYFIELD:  Huh.  What is it according to you?
>
> MR. GREENBERG:  Um . . . um . . .  According to me—well—this is tough.  It's tough.  I don't  what to say, man.
>
> DET. HOLYFIELD:  Well, you know what to say.  Your heart's telling you to tell the truth . . . .
>
> MR. GREENBERG: Well—oy.  So what happens—oh, man.  I'm just—this is really tough, 'cause I don't want to go to jail.  Right?
>
> DET. HOLYFIELD:  Who wants to go to jail?
>
> MR. GREENBERG:  No one.  You know?  And I mean—and I just don't –it's like a split, you know.  If you don't say anything, what happens in the future?  If you do say things, then what happens in the future?  Those are two unknowns to me.  That's what I've been wrestling with.
>
>  DET. HOLYFIELD:  Sometimes the future's the same.  It's just that people will view you differently.
>
> MR. GREENBERG:  Right.
>
> DET. HOLYFIELD:  It all depends on whether you want your character to take a hit or not.
>
> MR. GREENBERG:  I don't want that.  It's pretty much all we got, right?
>
> DET. HOLYFIELD:  Yeah.
>
> MR. GREENBERG:  Um. . . I don't know what to say.  I guess I—I don't know.
>
> DET. HOLYFIELD:  You screwed up.
>
> MR. GREENBERG:  Huh?

DET. HOLYFIELD:  Start from there.  You realized you screwed up.  And I know you're sorry for it, right?  And I know that you don't intend to ever do that again.  You can start from there.

MR. GREENBERG:  Okay.  Let's start from there.

DET. HOLYFIELD:  So what did you screw up?

MR. GREENBERG:  I—you know.

. . . .

DET. HOLYFIELD:  . . . What—what possessed you to screw up like that?  What caused that?

MR. GREENBERG:  I don't know.  I was just walking down the street, smoking, and I just—your eyes—my eyes went that direction, really.

DET. HOLYFIELD:  What drew your attention to it?

. . . .

MR. GREENBERG:  Just the light, really.

DET. HOLYFIELD:  So what about the light?

MR. GREENBERG:   I mean, you can't –I didn't even see anything.  So it was mostly pink.  A pink ---

DET. HOLYFIELD: Pink?

MR. GREENBERG:  Thought maybe—maybe if I get closer, I'll see something.  I don't know.

DET. HOLYFIELD:  And that's what drew you over to it was the maybe?

MR. GREENBERG:  I wasn't really that close.  But--

DET. HOLYFIELD:  Standing—standing in the window, on the ledge of the window, is pretty close.  Don't you think?

MR. GREENBERG:  That's close, yeah.

DET. HOLYFIELD:  Yeah.  So that's closer than what you just told me.  So what—**what made you get on the window ledge**?

MR. GREENBERG:  To look.

DET. HOLYFIELD:  To look? Did it help?

MR. GREENBERG:  Not really, no.

(Bates No. 82-86).

DET. HOLYFIELD:   So let—let me see if I've got this straight.

- 15 -

You went up there, parked your car, were just walking around to clear your head. And there were—you saw people around, but you're not—you don't associate any of those people with that house?

MR. GREENBERG: Huh-uh.

DET. HOLYFIELD: But then there was this light coming from one of the windows, and you thought you'd go take a look, and **you got up on the windowsill or part of the ledge** and –to look it, but it didn't work.

MR. GREENBERG: **That is correct**.

. . . .

DET. HOLYFIELD: Okay. Now, when the officers came to your house, you lied to them because you were afraid?

MR. GREENBERG: Yeah. Absolutely. I'm very afraid. I'm still very afraid.

DET. HOLYFIELD: I understand.

MR. GREENBERG: But you have to just work through, I guess, like you're saying. I mean, you know, I know you have rhetoric to use on me. But I also know that you're right. I guess—I mean, I screwed up. You've got to man up and take it. . . .

(Bates No. 88-90).

MR. GREENBERG: . . . . So what's going to happen now?

DET. HOLYFIELD: Well, the problem that we have now is that – excuse me—**rather than being—standing outside on the ground looking through a window, you were up on the window ledge, literally up on the window ledge**. That puts you on a residential structure, which is trespassing. But the way that the statute reads is in or on a residential structure is felony trespass. So the charge is going to be felony trespassing.

MR. GREENBERG: You said it was a misdemeanor.

DET. HOLYFIELD: When I thought you were standing there just looking through a window, then –

MR. GREENBERG: That's what I did.

DET. HOLYFIELD: No. When you got up on the window and were standing out on the ledge, that puts you on a residential structure. . . .

- 16 -

MR. GREENBERG: So you tricked me. Great. Thanks.[5]

DET. HOLYFIELD: No. It's not a trick, Dave.

MR. GREENBERG: You said it was a misdemeanor.

DET. HOLYFIELD: It's not a trick. I can show you what the statute reads. And that's—when you became [sic] on the windowsill, it changed—changed the statute.

(Bates No. 94-96).

The undersigned finds that the record supports the state courts' conclusion that the interviewing detective did not make any promises to Petitioner to induce the August 27 Confession. Moreover, the record reflects that Petitioner has a Master's degree, was approximately 42 at the time of the August 27, 2009 interview, and has prior experience with talking to police officers investigating a crime.[6] (Bates No. 34, 44-45, 63, 74). Petitioner told the interviewing detective that he knew the detective has "rhetoric to use on [him]." (Bates No. 90). In addition, the interviewing detective testified that Petitioner was calm and "slow, deliberate" in speaking during the interview. (Bates No. 223, 227). The interviewing detective gave Petitioner water upon request. (Bates No. 69-70). Finally, even though the interviewing detective told Petitioner that he was not under arrest or in custody, the detective informed Petitioner of the *Miranda* rights.[7] (Bates No. 36-37). After examining the totality of the circumstances, the undersigned does not find that the state court's conclusion that Petitioner's confession was voluntary was contrary

---

[5] To the extent Petitioner maintains that the interviewing detective "tricked" him, the Ninth Circuit has explained that "[t]rickery, deceit, even impersonation do not render a confession inadmissible, certainly in noncustodial situations and usually in custodial ones as well, unless government agents make threats or promises." *United States v. Crawford*, 372 F.3d 1048, 1060-61 (9th Cir. 2004).

[6] Petitioner told the interviewing detective that he was convicted of a crime when he was approximately 20 years old regarding the purchase of a bike. (Bates No. 44-45). When the detective encouraged Petitioner to confess, Petitioner stated "Well, I mean, I just remember my—when I was 20 and that happened with the bike, if I didn't say anything, none of—nobody would have—nothing would have happened. There was nothing they could do." (Bates No. 74).

[7] Section III(B)(5) below explains that to the extent Petitioner raises a Fifth Amendment/*Miranda* claim in this proceeding, it is unexhausted and procedurally defaulted.

- 17 -

to, or an unreasonable application of, the foregoing clearly established federal law. *See Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004) (petitioner cannot prevail if "fairminded jurists could disagree over whether" his confession was coerced); *Richter,* 562 U.S. at 102 (opining that relief under Section 2254(d)(1) is prohibited unless "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the Court's precedent"); *Early v. Packer*, 537 U.S. 3, 8 (2002) (the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them"). Accordingly, it is recommended that the Court deny Petitioner's claim that the August 27 Confession was involuntary.

## 2. Voluntariness of the August 31 Confession

In his Opening Brief on direct appeal in the 2011 Case, Petitioner requested the Arizona Court of Appeals to overturn the trial court's ruling that the August 31 Confession is admissible. (Bates No. 346, 384). In its Answering Brief, the State correctly observed that the Opening Brief "does not present any argument challenging that ruling . . . ." (Bates No. 445-46). Petitioner's Reply Brief only addressed the August 27 Confession and omitted the request that the Arizona Court of Appeals find the August 31 Confession inadmissible. (Bates No. 451-66). In its February 2015 decision, the Arizona Court of Appeals stated that it would not consider the admissibility of the August 31 Confession as Petitioner did not develop any argument as to that issue. (Bates No. 19).

Respondents contend that Petitioner's habeas claim with respect to the August 31 Confession is unexhausted. (Doc. 11 at 17-18). In his Reply, Petitioner asserts that he "presented the claim in state court" and "met the exhaustion requirement." (Doc. 14 at 8). Petitioner, however, does not provide any support for these conclusory assertions.

A claim is only "fairly presented" to the state courts when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim under the United States Constitution." *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (quotations

omitted); *see Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court."). A "general appeal to a constitutional guarantee," such as due process, is insufficient to achieve fair presentation. *Shumway*, 223 F.3d at 987 (quoting *Gray v. Netherland,* 518 U.S. 152, 163 (1996)); *see Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because its factual basis was presented to the state courts on state law grounds—a "mere similarity between a claim of state and federal error is insufficient to establish exhaustion." *Shumway,* 223 F.3d at 988 (quotations omitted). Even when a claim's federal basis is "self-evident," or the claim would have been decided on the same considerations under state or federal law, a petitioner must still present the federal claim to the state courts explicitly, "either by citing federal law or the decisions of federal courts." *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted), *amended by* 247 F.3d 904 (9th Cir. 2001); *see Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (claim not fairly presented when state court "must read beyond a petition or a brief . . . that does not alert it to the presence of a federal claim" to discover implicit federal claim).

Based on the record, the undersigned finds that Petitioner failed to fairly present in state court his habeas claim relating to the August 31 Confession. The claim is therefore unexhausted, and for the reasons set forth in Section IV below, is procedurally defaulted.

### 3. "Horizontal Appeal" (i.e. Relitigation) of the Admissibility of the August 27 and August 31 Confessions

Petitioner contends that the Arizona Court of Appeals "violated Petitioner's due process rights when it permitted the State to horizontally appeal the admissibility" of the August 27 and August 31 Confessions. (Doc. 1 at 25). Petitioner asserts that the "state waived the opportunity to challenge the original ruling by the first trial court judge."

(Doc. 14 at 6). The undersigned finds that the "horizontal appeal" claim relating to the August 31 Confession is unexhausted and procedurally defaulted for the reasons explained in Sections III(B)(2) and (IV). The undersigned finds that the "horizontal appeal" claim relating to the August 27 Confession is also unexhausted, as explained below.

Respondents argue that the "horizontal appeal" claim relating to the August 27 Confession was presented to the Arizona Court of Appeals as a state-law claim, not a federal claim. (Doc. 11 at 18). Petitioner does not address this assertion in his Reply (Doc. 14).

In support of his "horizontal appeal" claim on direct appeal, Petitioner primarily relied on the Arizona Court of Appeals case *State v. Whelan*, 91 P.3d 1011 (Ariz. Ct. App. 2004) and Arizona Rule of Criminal Procedure 16.1(d). (Bates No. 374-83). *Whelan* involved application of Arizona jurisprudence concerning the law of the case doctrine. Petitioner stated that "[t]he narrow issue on appeal is whether the trial court abused its discretion in misapplying the holding of *Whelan* to the present facts. . . . The State should have been barred from re-litigating the suppressed confession in a horizontal appeal under *Whelan*." (Bates No. 382). The undersigned finds that Petitioner failed to fairly present his "horizontal appeal" claim regarding the August 27 Confession as a federal claim in the Arizona Court of Appeals.[8] The claim is therefore unexhausted. *See Johnson v. Zenon,* 88 F.3d 828, 830 (9th Cir. 1996) (Petitioner did not "fairly present" his federal claim in state court by limiting his arguments exclusively to state evidentiary law, despite arguing that prior act evidence "infringed on his right to present a defense and receive a fair trial"); *Hiivala v. Wood,* 195 F.3d 1098 (9th Cir. 1999) (holding that

_____

[8] It is noted that in the section of the Opening Brief regarding the "horizontal appeal" issue, Petitioner stated: "It is clear that 'collateral estoppel is incorporated in the Fifth Amendment guarantee against double jeopardy binding on the states through the due process clause of the Fourteenth Amendment.'" (Bates No. 379) (citing *Whelan*, 91 P.3d at 1015). This is merely a "drive-by citation" to federal constitutional law and does not satisfy the exhaustion requirement as to Petitioner's "horizontal appeal" claim in this habeas proceeding. *See Castillo*, 399 F.3d at 1000 ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory.").

1  petitioner failed to exhaust federal due process issue in state court because

2  petitioner presented claim in state court only on state grounds); *Gatlin v. Madding,* 189

3  F.3d 882 (9th Cir. 1999) (holding that petitioner failed to "fairly present" federal claim to

4  state courts where he failed to identify the federal legal basis for his claim).  The claim is

5  procedurally defaulted for the reasons set forth in Section IV.

6      Moreover, absent some federal constitutional violation, a violation

7  of state law does not provide a basis for habeas relief. *Wilson v. Corcoran*, 562 U.S. 1, 5

8  (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal

9  judgment susceptible to collateral attack in the federal courts.") (emphasis in

10 original); *Estelle v. McGuire,* 502 U.S. 62, 67 (1991) ("We have stated many times that

11 'federal habeas corpus relief does not lie for errors of state law.'") (citations omitted).

12 "The issue for [a court], always, is whether the state proceedings satisfied due process;

13 the presence or absence of a state law violation is largely beside the point." *Jammal v.*

14 *Van de Kamp,* 926 F.2d 918, 919-20 (9th Cir. 1991).

15     The U.S. Supreme Court has explained that the law of the case doctrine applies

16 when a court is addressing "the same issues in subsequent stages in the *same case*."

17 *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (emphasis added)

18 (citation omitted).  Petitioner does not proffer any U.S. Supreme Court authority holding

19 that a judge's decision to reconsider a prior suppression ruling might rise to the level of a

20 federal due process violation.[9]  "[I]t is not an unreasonable application of clearly

21 established Federal law for a state court to decline to apply a specific legal rule that has

22 not been squarely established by [the Supreme] Court."  *Knowles v. Mirzayance*, 556

23 U.S. 111, 122 (2009); *see also Musladin*, 549 U.S. at 76 (where holdings of the Supreme

24 Court regarding the issue presented on habeas review are lacking, "it cannot be said that

25 the state court 'unreasonabl[y] appli[ed] clearly established Federal law'") (alterations in

26

27     [9] To the extent Petitioner cites federal courts of appeals cases in support of his
   claim, "[c]ircuit precedent may not serve to create established federal law on an issue the
28 Supreme Court has not yet addressed."  *Holley v. Yarborough*, 568 F.3d 1091, 1097 (9th
   Cir. 2009).

- 21 -

original); *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam) ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law. Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized.") (alteration in original) (internal citations and quotation marks omitted ).

Petitioner has not shown that the state courts' rejection of Petitioner's claim that the trial court in the 2011 Case was bound by the trial court's ruling in the 2009 Case as to the admissibility of the August 27 and 31 Confessions is contrary to or an unreasonable application of clearly established U.S. Supreme Court precedent. The "horizontal appeal" claim may therefore be alternatively denied on the merits. *See Miller v. Sullivan*, No. SACV 07–238 VAP (MAN), 2011 WL 3756682, at *12 (C.D. Cal. May 26, 2011) ("This Court is not aware of any Supreme Court precedent clearly establishing that a state trial court's failure to follow an earlier state trial court ruling regarding the admissibility of a confession provides a ground for federal habeas relief."); *United States v. Phillips*, 59 F.Supp.2d 1178, 1188 (D. Utah 1999) (holding that a decision on a motion to suppress made in a criminal case that was dismissed without prejudice is not the law of the case in a refiled criminal case because the refiled case is a new case and the law of the case doctrine only applies to subsequent stages in the same case).

### 4. Fifth Amendment Right to Remain Silent and Sixth Amendment Right to Counsel

In the "Claims for Relief" section in the Petition, Petitioner states: "The Petitioner's 5th Amendment right to remain silent, 6th Amendment right to counsel . . . were violated when Petitioner's August 27 and August 31, 2009 statements were ruled admissible by state court rulings." (Doc. 1 at 17). Respondents accurately note that Petitioner "does not actually argue these two claims" in the Petition. (Doc. 11 at 11). The undersigned finds that the vague and conclusory allegations asserting a violation of Petitioner's Fifth and Sixth Amendment rights do not adequately present claims for habeas relief and therefore should be summarily dismissed. *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) ("It is well-settled that '[c]onclusory allegations which are

not supported by a statement of specific facts do not warrant habeas relief.'") (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)). Further, Petitioner did not fairly present the claims to the Arizona Court of Appeals. (Bates No. 345-84). The Fifth and Sixth Amendment claims are unexhausted and procedurally defaulted for the reasons discussed in Section IV below.

### 5. Statements in the Petition and Opening Brief Concerning *Miranda* Warnings

Confessions following an illegal arrest are admissible if the prosecution establishes significant attenuation between the Fourth Amendment violation and the defendant's confession and show that the confession was "sufficiently an act of free will to purge the primary taint." *Brown v. Illinois*, 422 U.S. 590, 602 (1975) (quoting *Wong Sun v. United States*, 371 U.S. 471, 486 (1963). Whether there was a "break" in the causal chain between an unlawful arrest and a defendant's incriminating statement depends on the facts of each specific case. *Id.* The Supreme Court has explained that *Miranda* warnings are an important factor in determining whether a confession is "obtained by exploitation of an illegal arrest." *Id.* at 603.[10] In support of his Fourth Amendment claim, Petitioner asserts that he did not understand his *Miranda* rights, contending that:

> It was clear . . . that Petitioner [did] not understand the scope of the Miranda warnings he had [] been issued [during the August 27, 2009 interview]. The burden was on law enforcement at this point to further explain the breadth of Petitioner's rights. Instead, Detective went forward with the interview over further indications Petitioner didn't understand the nature of his rights of [sic] the nature of the interview with law enforcement.
> . . . .
> It is not "prudent" that Petitioner know the nature and extent of his rights, it is required by law. Petitioner did not accompany law enforcement officers to the police station on his own free will, rather he was illegally arrested and taken

---

[10] Other factors include: (i) the "purpose and flagrancy of the official misconduct"; the "temporal proximity of the arrest and the confession"; and the presence of intervening circumstances. *Brown*, 422 U.S. at 603-04.

- 23 -

from his home to be interrogated at the Flagstaff Police Department.

(Doc. 1 at 22-23). With the exception that "Petitioner" is substituted for "Appellant," the exact language above is contained in Petitioner's Opening Brief filed in the Arizona Court of Appeals in support of Petitioner's Fourth Amendment claim. (Bates No. 360-61).

"[A] procedural *Miranda* [Fifth Amendment] violation differs in significant respects from violations of the Fourth Amendment . . . ." *Oregon v. Elstad*, 470 U.S. 298, 306 (1985). Determining whether an individual is in police "custody" for purposes of *Miranda* and whether a Fourth Amendment "seizure" has occurred involves "two analytically distinct inquiries." *United States v. Revels*, 510 F.3d 1269, 1273 (10th Cir. 2007) (citing *Berkemer v. McCarty*, 468 U.S. 420, 435–42 (1984)). To the extent Petitioner raises an independent Fifth Amendment/*Miranda* claim in this proceeding, the undersigned finds that it is not sufficiently developed to warrant further consideration. *See Greenway*, 653 F.3d 790, 804 (9th Cir. 2011) ("Greenway's cursory and vague claim cannot support habeas relief."); *Jones*, 66 F.3d at 204. In addition, the undersigned finds that Petitioner failed to fairly present the claim to the Arizona Court of Appeals. *Castillo*, 399 F.3d at 999.

### C. Ground Three: Cumulative Error

In Ground Three, Petitioner asserts that "[t]he writ should issue as a result of the cumulative violations of Petitioner's constitutional rights." (Doc. 1 at 37). "The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973)). "[T]he fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less persuasive,' . . . and thereby had a 'substantial and injurious effect or influence' on the jury's verdict." *Id.* (citations

omitted). The Ninth Circuit has held that exhaustion of claims underlying a cumulative error claim does not also exhaust the cumulative error claim itself. *See Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008) ("Briefing a number of isolated errors that turn out to be insufficient to warrant reversal does not automatically require the court to consider whether the cumulative effect of the alleged errors prejudiced petitioner."); *Solis v. Garcia*, 219 F.3d 922, 930 (9th Cir. 2000) (finding that petitioner did not fairly present cumulative-error claim where he mentioned it in final paragraph of brief to state's high court but did not label it as "issue," argue it, or cite authority for it).

Petitioner did not present his cumulative error claim to the Arizona courts. The undersigned finds that the claim is unexhausted and procedurally defaulted for the reasons discussed in Section IV.

### D. Judicial Bias

Although not specifically identified as a ground for habeas relief, Petitioner asserts that "[t]here is an appearance that Judge Nichols Brown and the Arizona appellate courts were biased and partial . . . ." (Doc. 1 at 35). Petitioner asserts that "the fact that Judge Nichols Brown a former career prosecutor with the Coconino County Attorney's office, presumed she could simply sit as an appellate court over another Superior Court judge (Hendrix) and reverse her ruling creates the appearance of bias and partiality."[11] (*Id.* at 37). Petitioner further asserts that "[t]his is compounded by the facts that there was no change in the state or federal law and unlike Judge Hendrix Judge Nichols never saw or heard the testimony of the four state witnesses." (*Id.*). To the extent Petitioner raises judicial bias as a separate claim for habeas relief, the claim is meritless.[12]

The relevant issue when evaluating a judicial bias claim in a habeas proceeding is "whether the state trial judge's behavior rendered the trial so fundamentally unfair as

---

[11] Judge Hendrix was the judge in the 2009 Case; Judge Brown was the judge in the 2011 Case.

[12] The undersigned does not resolve whether the judicial bias claim is procedurally defaulted. *See Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) (holding that a federal court may deny an unexhausted claim on the merits "when it is perfectly clear that the applicant does not raise even a colorable federal claim").

to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995). The Ninth Circuit has recognized that there are three general circumstances in which an appearance of bias violates due process: (1) a judge who "has a direct, personal, substantial pecuniary interest in reaching a conclusion against one of the litigants;" (2) a judge who "becomes embroiled in a running, bitter controversy with one of the litigants;" and (3) a judge who "acts as part of the accusatory process." *Crater v. Galaza*, 491 F.3d 1119, 1130-31 (9th Cir. 2007) (citing cases). To prevail on a claim of judicial bias, a petitioner must overcome a "strong presumption that a judge is not biased or prejudiced." *Sivak v. Hardison*, 658 F.3d 898, 924 (9th Cir. 2011) (quoting *Rhoades v. Henry,* 598 F.3d 511, 519 (9th Cir. 2010)). Bias can "almost never" be demonstrated solely on the basis of a judicial ruling. *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Aside from his conclusory and speculative allegations, Petitioner has failed to allege or show specific facts that establish that the trial judge's challenged decisions are the product of actual bias. *See Greenway*, 653 F.3d at 804; *James*, 24 F.3d at 26; *Wacht*, 604 F.2d at 1247. The record does not indicate that any of the state judges' behavior rendered the proceedings so fundamentally unfair as to violate Petitioner's federal due process rights. Therefore, to the extent Petitioner asserts judicial bias as a claim for habeas relief, the undersigned recommends that the claim be denied.

## IV. PETITIONER'S UNEXHAUSTED CLAIMS ARE PROCEDURALLY DEFAULTED WITHOUT EXCUSE

If Petitioner returned to state court and presented his unexhausted habeas claims in a petition for post-conviction relief ("PCR"), the Petition would be untimely. *See* Ariz. R. Crim. P. 32.1 and 32.4 (a petition for post-conviction relief must be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is later"). Although Arizona Rule of Criminal Procedure 32.4 does not bar untimely PCR claims that fall within the category of claims specified in Arizona Rule of Criminal Procedure 32.1(d) through (h), Petitioner has not asserted that any of these exceptions apply to him

and the undersigned does not find that any of the exceptions would apply. A state post-conviction action is futile where it is time-barred. *See Beaty*, 303 F.3d at 987 (9th Cir. 2002); *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

Further, under Arizona Rule of Criminal Procedure 32.2(a)(3), a defendant is precluded from raising claims that were adjudicated or could have been raised and adjudicated on direct appeal or in any previous collateral proceeding. *See Krone v. Hotham,* 890 P.2d 1149, 1151 (1995) (capital defendant's early petition for post-conviction relief raised limited number of issues and waived other issues that he could have then raised, but did not); *State v. Curtis,* 912 P.2d 1341, 1342 (Ariz. Ct. App. 1995) ("Defendants are precluded from seeking post-conviction relief on grounds that were adjudicated, or could have been raised and adjudicated, in a prior appeal or prior petition for post-conviction relief."); *State v. Berryman,* 875 P.2d 850, 857 (Ariz. Ct. App. 1994) (defendant's claim that his sentence had been improperly enhanced by prior conviction was precluded by defendant's failure to raise issue on appeal). Arizona Rule of Criminal Procedure 32.2(a)(3) would preclude Petitioner from returning to state court to litigate his unexhausted habeas claims.

For the above reasons, the undersigned finds that the unexhausted habeas claims discussed above are procedurally defaulted.[13] *See Beaty*, 303 F.3d at 987 (a claim is procedurally defaulted "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the requirement would now find the claims procedurally barred") (quoting *Coleman*, 501 U.S. at 735 n.1)).

The merits of a habeas petitioner's procedurally defaulted claims are to be

---

[13] This type of procedural default is often referred to as "technical" exhaustion because although the claim was not actually exhausted in state court, Petitioner no longer has an available state remedy. *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no remedies any longer 'available' to him.").

reviewed if the petitioner (i) shows cause for the default and actual prejudice as a result of the alleged violation of federal law or (ii) shows that the failure to consider the federal claim will result in a fundamental miscarriage of justice. *McKinney v. Ryan*, 730 F.3d 903, 913 (9th Cir. 2013).

In order to establish cause for a procedural default, "a petitioner must demonstrate that the default is due to an external objective factor that cannot fairly be attributed to him." *Smith v. Baldwin*, 510 F.3d 1127, 1146 (9th Cir. 2007) (internal quotation marks and citation omitted). Petitioner presents no argument that his procedural defaults should be excused under the cause and prejudice exception. The undersigned does not find that the record presents any evidence that Petitioner's procedural defaults are due to an external factor that cannot fairly be attributed to him. Cause therefore has not been established. Where a petitioner fails to establish cause, the Court need not consider whether the petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986). Accordingly, the undersigned finds that Petitioner has not satisfied the "cause and prejudice" exception to excuse his procedurally defaulted habeas claims.

A petitioner seeking federal habeas review under the miscarriage of justice exception must establish his or her factual innocence of the crime and not mere legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence– whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324. Because of "the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." *Shumway*, 223 F.3d at 990 (citing *Calderon v. Thomas*, 523 U.S. 538, 559 (1998)).

Petitioner does not assert that the Court should excuse his procedural defaults because he is actually innocent. To the extent Petitioner argues that the miscarriage of justice exception should be applied to excuse Petitioner's procedural defaults, Petitioner

does not proffer any new evidence to support actual innocence. After reviewing the record, the undersigned finds no evidence showing that a constitutional violation has probably resulted in the conviction of an innocent man. The undersigned thus finds the miscarriage of justice exception inapplicable to this case. *Wood*, 693 F.3d at 1117. Consequently, the undersigned recommends that the Court not excuse Petitioner's procedural defaults.

## V. CONCLUSION

Based on the foregoing,

**IT IS RECOMMENDED** that the Petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because the undersigned does not find that jurists of reason would find it debatable that (i) the dismissal of a majority of Petitioner's habeas claims are justified by a plain procedural bar and (ii) Petitioner has not made a substantial showing of the denial of a constitutional right as to the remaining claims for relief.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the

Magistrate Judge's recommendation.   *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated this 28th day of December, 2017.

_____

Eileen S. Willett
United States Magistrate Judge